

SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISIONS I, II & III
No. CV-15-622

| | |
|---|---|
| FELICIA FARRIS, M.D.<br>APPELLANT<br><br>V.<br><br>CYNTHIA L. CONGER C.P.A. and<br>CONGER WEALTH MANAGEMENT<br>APPELLEES | Opinion Delivered April 27, 2016<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>THIRD DIVISION<br>[NO. 60CV-13-4022]<br><br>HONORABLE CATHLEEN V.<br>COMPTON, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Felicia Farris, M.D., appeals from an order of the Pulaski County Circuit Court granting the motion for summary judgment filed by appellees Cynthia Conger and Conger Wealth Management (collectively, CWM). The circuit court found that Farris's cause of action sounded in negligence, rather than in contract, and that her complaint was barred by the three-year statute of limitations attendant to negligence actions. We agree and affirm.

The facts of the case are not in dispute. Farris and CWM entered into a contract by which CWM agreed to provide wealth-management services to Farris. On November 11, 2008, Farris learned of an opportunity to purchase a parcel of real estate at a foreclosure sale, and she asked CWM to transfer money from her Fidelity Investment account to her personal checking account so that she could purchase the property at the sale. CWM advised Farris

that the cutoff for initiating a timely Federal Reserve Wire Network (FRWN) money transfer was 3:00 p.m. on November 13; however, CWM did not initiate the transfer until 3:21 p.m. CWM also initiated an Automated Clearing House transfer, rather than a FRWN transfer, which would take several days to clear. The property was sold to someone else at the sale. Farris was ultimately able to purchase the property, but she had to spend $51,843.98 to do so instead of $22,286.70.

Farris filed a breach-of-contract complaint against CWM on October 10, 2013,[1] asserting that, by failing to timely transfer the funds, CWM had breached its written wealth-management agreement with her. Farris sought restitution, lost profits, costs and fees, prejudgment interest, and punitive damages. CWM filed a motion to dismiss on the grounds that Farris's complaint sounded in tort, rather than in contract, and thus the three-year statute of limitations for a negligence action had expired. CWM subsequently filed a motion for summary judgment, asserting the same reasoning.

The circuit court granted CWM's motion for summary judgment. The court found that the complaint contained a claim of breach of contract, but then noted that "the question then becomes whether the reference to the contract is the sort of specific promise that transforms the gist of the action from one for negligence into one for breach of the written agreement." The court concluded that it did not and that the complaint was "based upon a negligence claim cloaked as a contract claim." Accordingly, the court determined that

---

[1] A breach-of-contract claim has a five-year statute of limitations. Ark. Code Ann. § 16-56-111(a) (Repl. 2005).

SLIP OPINION

Farris's claim was barred by the statute of limitations and granted CWM's summary-judgment motion.

Ordinarily, our review of a grant of summary judgment is well settled. A circuit court may grant summary judgment when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Lucci Corp. v. Breaux Mfg. Co.*, 2013 Ark. App. 705, at 3. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. at 3–4. We determine if summary judgment was appropriate based on whether the evidence presented by the moving party in support of the motion leaves a material fact unanswered. *Id*. at 4. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. However, a different standard applies in this appeal.

Here, the circuit court's dismissal of Farris's complaint was based on its characterization of the nature of her claim, which resulted in the court's finding that Farris's cause of action was barred by the running of the statute of limitations. When this occurs, our analysis is somewhat different. In *McQuay v. Guntharp*, the supreme court explained that in such circumstances, the appellate court "must look to the complaint itself" in reaching its conclusions regarding the statute of limitations. 331 Ark. 466, 470, 963 S.W.2d 583, 584 (1998) (citing *O'Bryant v. Horn*, 297 Ark. 617, 764 S.W.2d 445 (1989); *Dunlap v. McCarty*, 284 Ark. 5, 678 S.W.2d 361 (1984)); *see also Goldsby v. Fairley*, 309 Ark. 380, 831 S.W.2d

142 (1992) (in making the determination on the application of the statute of limitations, this court looks to the complaint itself, despite the fact that the trial court had granted summary judgment). The scope of judicial focus when deciding whether a contract or tort statute of limitations applies is based upon the "gist" of the allegations raised in the complaint. *Tony Smith Trucking v. Woods & Woods, Ltd.*, 75 Ark. App. 134, 136, 55 S.W.3d 327, 329 (2001).

Based upon the above authority, we turn our attention to Farris's complaint. In determining the "gist" of her complaint, we must look to the facts alleged, as Arkansas does not recognize notice pleadings, only fact pleadings. *Id.* Moreover, only facts alleged in the complaint are treated as true, not the plaintiff's theories, speculation, or statutory interpretation. *Worden v. Kirchner*, 2013 Ark. 509, 431 S.W.3d 243; *Dockery v. Morgan*, 2011 Ark. 94, 380 S.W.3d 377.

Farris's complaint states that her action is one for breach of contract. In order for the contract statute of limitations to apply, there must have been a breach of a specific promise. *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998). Thus, to determine whether Farris's complaint sounds in contract or in tort, we must determine what specific contractual agreement she contends was breached. In her breach-of-contract count, Farris alleged the following:

> Conger Wealth Management had exclusive control over Dr. Farris's Fidelity Investment Account. By agreeing and assuring Dr. Farris that they would execute transfer of funds in a timely fashion so that the funds [would be] available to purchase the property and in failing to do so, the defendants breached the written Wealth Management Services contract with Dr. Farris.
>
> The defendant's breaches of contract include, but are not limited to, failing to arrange for execution of the brokerage transaction as directed by Dr. Farris in a timely

fashion and in compliance with paragraph 5 of the written Wealth Management agreement.

This breach of contract proximately caused Dr. Farris financial damages that would not have occurred otherwise.

The crux of Farris's complaint is that CWM failed to transfer funds from one account to another in a sufficiently timely manner to enable her to purchase the property she desired. Specifically, Farris alleged a breach of contract in CWM's failure "to arrange for execution of the brokerage transaction as directed by Dr. Farris in a timely fashion and in compliance with paragraph 5." In *O'Bryant*, *supra*, the supreme court stated that a complaint must show that the plaintiff's cause of action was based upon the writing in order for the statute of limitations for written contracts to apply. We therefore turn to paragraph 5 of the contract.

Paragraph 5 is captioned "Execution of Brokerage Transactions" and addresses how CWM arranges for the execution of securities brokerage transactions. The bulk of the paragraph explains how CWM will arrange for such transactions through a broker–dealer and will engage in best practices to accomplish brokerage transactions. Farris, however, points to a portion of one particular sentence in that paragraph. As quoted by Farris, that sentence declares that "[w]e shall endeavor to process all Account transactions in a timely manner[.]" Farris thus argues that because CWM did not process her account transaction in a timely manner, it breached its written agreement.

That is not the entirety of that sentence, however. In full, it reads as follows: "We shall endeavor to process all Account transactions in a timely manner, but do not represent nor warrant that any such transaction shall be processed or effected by the Broker–Dealer on

the same day as requested." This is more in the nature of a disclaimer, rather than a specific promise. Moreover, to the extent that it can be construed as a promise, it is a promise to attempt to perform diligently.

The question then becomes whether a promise to perform diligently can form the basis of a breach-of-contract claim. The answer is that it cannot. In *Sturgis v. Skokos*, *supra*, the supreme court held that a failure to "proceed diligently" was not a breach of a specific promise but was nothing more than negligence. Similarly, in *Tony Smith Trucking v. Woods & Woods*, *supra*, this court held that a contractual agreement to perform detailed duties to the best of one's "knowledge, skill and ability," "at most represent[ed] a general duty to represent appellants with diligence. A violation of that obligation is, by definition, nothing more than negligence." *Tony Smith Trucking*, 75 Ark. App. at 138–39, 55 S.W.3d at 331.

Supreme court caselaw is thus clear that an allegation of a failure to perform diligently amounts to negligence. Farris alleged that CWM breached paragraph 5 of the agreement. The applicable portion of paragraph 5, however, promises nothing more than an attempt to perform diligently. As such, on its face, Farris's complaint does not raise a contract claim. The circuit court did not err in concluding that the gist of Farris's complaint sounded in negligence and that, as a result, the complaint was time-barred.

Affirmed.

GLADWIN, C.J., and VIRDEN, GRUBER, HIXSON, and BROWN, JJ., agree.

HARRISON, GLOVER, and HOOFMAN, JJ., dissent.

6

**BRANDON J. HARRISON, Judge, dissenting.** I respectfully dissent from the majority's opinion. Like the circuit court before it, this court has judged the merit of Farris's contract claim rather than focusing on the sole issue that was before the circuit court when it dismissed Farris's amended complaint: accepting all of her allegations as true, and looking only at the amended complaint and the written contract that Farris attached to it, did she allege the "gist" of a contract claim for the purpose of deciding whether the five-year statute-of-limitations period applies? The answer is yes. Whether she has a winning or losing claim is not before us.

This case turns on fundamentals, and a basic tenet of pleading is that a party states a contract claim if she "assert[s] the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach." *Perry v. Baptist Health*, 358 Ark. 238, 244, 189 S.W.3d 54, 58 (2004). Here, Farris attached to her amended complaint a written agreement between the parties and stated that it governed the parties' wealth-management relationship. She also factually alleged that Conger breached the agreement by failing to correctly and timely execute a brokerage transaction as the written contract required Conger to do. Farris then specifically stated that she was damaged given Conger's failure to perform under the contract. Because we must assume that Farris's allegations are true given the legal question presented—a point of procedure on which we all agree—I would hold that the circuit court erred in concluding that the complaint was time-barred.

The majority's affirmance opens the law of pleading and statutes of limitations to a

degree that will encourage more parties to ask circuit courts to decide how a plaintiff's complaint should be characterized. This is not a desirable development on the whole, especially given the wide gate this case arguably creates.

The claim-characterization doctrine applied in this case stems from a short line of cases that primarily involved complaints where a negligence claim was characterized as a contract claim for the purpose of avoiding the shorter limitations periods that typically apply in tort cases. As the majority itself recognizes, when two or more statutes of limitations could apply, then courts must determine the core of the case by looking solely at the complaint. *McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583 (1998). But if there is doubt on which statute should be applied, courts should favor the one that gives a plaintiff more, not less, time. *Sturgis v. Skokos*, 335 Ark. 41, 48, 977 S.W.2d 217, 220 (1998) ("If two or more statutes of limitations apply, generally the statute with the longest limitations period will govern."). This basic rule was not applied in this case.

The time-bar question can certainly turn on whether the plaintiff has satisfied Arkansas's fact-pleading requirements. *McQuay*, *supra*. In my view, however, Farris sufficiently stated a contract claim, in part, because "a breach of contract is not treated as a tort if it consists merely of a failure to act (nonfeasance) as distinguished from an affirmatively wrongful act (misfeasance)." *Morrow v. First Nat'l Bank of Hot Springs*, 261 Ark. 568, 550 S.W.2d 429 (1977). Farris's amended complaint does not necessarily allege misfeasance. Instead, she alleges that Conger failed to perform in accordance with a contractual term. That is wholly consistent with a contract claim. *See, e.g.*, *Zufari v. Architecture Plus*, 323 Ark. 411,

914 S.W.2d 756 (1996) (plaintiff's complaint sufficiently pled a breach-of-contract claim and five-year limitations period applied).

This court recently, and correctly, applied the gist-of-the-complaint rule in *Moody v. Tarvin*, 2016 Ark. App. 169. There, Moody alleged that he sustained serious physical injuries caused by a maintenance person who worked for the Tarvins at the trailer park they owned. *Id.* Moody contended that the Tarvins had a duty to provide him with a safe living environment as a result of their landlord-tenant relationship and they knew or should have known of the maintenance person's alleged violent tendencies. *Id.* Moody attached a written landlord-tenant contract to his complaint. *Id.* But unlike this case, there was a question whether Moody even signed the contract. And the contract in *Moody* primarily addressed rent payments, pet policies, and yard maintenance. *Id.* The contract said nothing about protecting tenants from harm that could befall them at a third-party's hand. We affirmed the circuit court's summary judgment in the Tarvins' favor because Moody's complaint did not come close to alleging a contract claim, and the deadline to file tort claims had expired. *Id.*

*Moody* presented a case in which the courts were justifiably asked to reject a plaintiff's characterization of her own complaint. But this case is far from *Moody*. The majority doesn't address *Moody*, though it does invoke two other cases to support its conclusion that Farris's complaint could not possibly assert a contract claim.

The first case is an attorney-malpractice case, *Sturgis*, 335 Ark. 41, 977 S.W.2d 217. Here, no particular professional-responsibility rule or malpractice statute was argued to the circuit court so as to bring this case within *Sturgis*'s orbit. The second case my colleagues put

stock in is *Tony Smith Trucking v. Woods & Woods, Ltd.*, 75 Ark. App. 134, 55 S.W.3d 327 (2001). There, clients sued their accountant in contract and in tort because the accountant allegedly caused an IRS audit. The contract provisions in that case were admittedly broad—"duties [for the accountant to perform] to the best of his knowledge, skill, and ability"—and this court acknowledged that the circuit court's "conclusion that the gist of the action is negligence is further supported by the fact that the original complaints filed by appellants alleged only negligence, but were soon amended to include breach of contract." *Id.* at 138–39, 55 S.W.3d at 330–31. So *Tony Smith Trucking* is distinguishable from this case, too, as a technical matter.

The deepest problem with the majority opinion is not a point of legal finery on whether preexisting cases can be sufficiently distinguished from this one or not, but that it must interpret the contract to conclude that the written agreement can't possibly support an actionable promise. This is a curious tack because, once again, fundamental tenets of contract law oppose the maneuver. What the parties understood a certain paragraph to mean—and the conduct it could or could not cover—is often *the* merits question in a contract case. *See, e.g.*, *Prochazka v. Bee-Three Dev., LLC*, 2015 Ark. App. 384, 466 S.W.3d 448. Maybe the provision in paragraph 5 is a disclaimer that is not actionable in the manner that Farris asserts in her complaint. Maybe not. Whatever the answer, the issue strikes me as a contract-interpretation point on the claim's merit.

I understand the allure to end this case given the developed record the parties made in the circuit court. But on the whole, I am unwilling to deny Farris a merit decision based

SLIP OPINION

on a limitations argument that is grounded in an uncommon and inherently slippery claim–characterization doctrine. The circuit court's decision should be reversed because it (1) considered material outside the complaint and (2) then concluded that the amended complaint sounded solely in tort. The complaint should not have been time-barred, especially when no defending party has presented any reason why applying the longer limitations period would be prejudicial.

GLOVER and HOOFMAN, JJ., join.

*Cullen & Co., PLLC*, by: *Tim J. Cullen*, for appellant.

*David Hargis*, for appellee.